## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CURTIS C. DAVIS d/b/a DAVIS CONTRACTING COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | *4:12-cv-153* |
| v. | ) ) | **COMPLAINT** |
| PERSONS SERVICE COMPANY, LLC BYRD BROTHERS EMERGENCY SERVICES, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

The Plaintiff, Curtis C. Davis d/b/a Davis Contracting Company, by and though his counsel, Christopher J. Nyhus, Pearce & Durick, 314 E. Thayer Ave., Bismarck, ND, for his Complaint against the above-referenced Defendants, states as follows:

### PARTIES

1. The Plaintiff, Curtis C. Davis, is a resident of Georgia who owns and operates Davis Contracting Company, as a sole proprietorship with its main office located at 3655 South Bogan Rd., Buford, Georgia, 30519.

2. Defendant Persons Service Company, LLC ("Persons") is an Alabama limited liability company with its principal offices located at 4474 Halls Mill Road, Mobile, Alabama, 36693.

3. Defendant Byrd Brothers Emergency Services, LLC ("Byrd Brothers") is a North Carolina limited liability company with its principal offices located at 5164 Lamm Road, Wilson, North Carolina, 27893.

4. Defendant Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation with its principal offices located at One Tower Square, Hartford, Connecticut, 06183, and holds surety bonds for Byrd Brothers.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 40 U.S.C. §§3131-3134 ("Miller Act") and pursuant to 28 U.S.C. §1345. This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. §1367.

6. This Court also has diversity jurisdiction over this action because the parties are citizens of different states and the amount in controversy is in excess of $75,000.00, pursuant to 28 USC 1332.

7. This suit is brought pursuant to 40 U.S.C. §3131 in the name of the United States of America for the use and benefit of Curt Davis d/b/a Davis Contracting Company (hereinafter referenced as "Davis").

8. Venue in this District is proper because the construction project ("Project") giving rise to this Miller Act proceeding was located in North Dakota near Minot.

## FACTUAL ALLEGATIONS

### The Project and Travelers Bond

9. The Army Corps of Engineers ("ACOE") awarded contract No. W912ES-11-C-0019 to Byrd for the construction of temporary housing, known as Mobile Home Group Site Development, Site 9A-2 and 9A-3 (DR-1981-ND) near Minot, ND ("the Project"). Travelers issued Payment Bond No. 105661643 in the amount of twelve million nine hundred eighty two thousand dollars ($12,982,000.00) to secure the obligations of Byrd on the construction of the Project.

<u>Davis' Verbal Contract with Byrd</u>

10. Davis has had a long-standing working relationship with Byrd on other projects around the country.

11. Davis agreed to act as an independent first-tier subcontractor on the Project for Byrd.

12. Based on prior business dealings between Davis and Byrd, Curt Davis entered into a verbal contract on September 19, 2011, with Bruce Crane, who was Byrd's representative on the Project. The agreement was for Davis to install storm drain pipe into all of the major roadways and driveways, as well as culverts in the driveways to each temporary housing unit in the Project, in exchange for payment from Byrd.

13. This contract with Byrd was solely for Davis' services. All of the pipe and gravel was provided to Davis for installation. The majority of the materials were already on the job site before Davis arrived.

14. As part of this agreement with Byrd, Davis was to complete this work within fifty-five (55) days, and it was required to be up to the standards of the Army Corps of Engineers (ACOE).

15. Davis accomplished the arduous task of installing all of the drain pipe and culverts within the required timeframe. Davis completed this work flawlessly and all of the work passed ACOE inspections.

16. The original price agreed upon for the work that Davis did on the Project for Byrd was $510,753.00. This involved work on two parts of the Project – Parts 9A-2 and 9A-3. On Part 9A-2, Davis was to be paid $267,546.00 for installing two hundred and nine (209) corrugated metal culverts in driveways to each temporary housing unit, at a price of 954.00 each, as well as sixteen (16) roadway pipes at $4260.00 each. Davis was to be paid a total of $243,207.00 for his work on part 9A-3 of the Project which involved installing one hundred

ninety eight (198) driveway culverts at $954.00 each, and seventeen (17) roadway drainage pipes at $3,195.00 each.

17. Change orders on the work were ordered by Byrd which resulted in an additional $45,432.00 owing to Davis. Additionally, back-charges were assessed against the amount Byrd owed Davis in the amount of $343,243.00, resulting in a final amount due and owing to Davis of $212,942.00.

18. Davis invoiced Byrd for these amounts promptly. Byrd never objected to the amount of any invoice.

19. Byrd made three advances of $15,000.00 each (totaling $45,000.00) toward the full amount that it owes Davis. This leaves $167,942.00 overdue and owing to Davis on the verbal contract with Byrd.

20. The last date that services were provided by Davis at the Project on the contract to Byrd was November 12, 2011.

<u>Davis' Written Contract with Persons</u>

21. While Davis was on the Project site doing work under the verbal contract for Byrd, Davis was asked to provide separate services to Persons by Persons' owners, Buddy Persons and Paul Persons. Persons was working as a first-tier subcontractor on the Project under Byrd, thereby making Davis a second-tier subcontractor on the Project for this work.

22. Davis started working on the Project on September 25, 2011, prior to signing any written contract. Initially, Davis repaired work that was done by a previous subcontractor, Paramount Construction.

23. A written contract, titled "Subcontractor Agreement" was signed by Davis and Persons on October 13, 2011, although Davis had already commenced work for Persons on the Project.

4

Under this contract, Davis was to install water and sewer service lines to one hundred (100) temporary housing units in exchange for being paid $1,200.00 per unit, as a subcontractor under Persons.  A complete copy of this written contract is attached to this Complaint as Exhibit A, and is incorporated herein by reference.

24. All pipe and other materials were provided by Persons or Byrd, as stated in clause 1.B. of the agreement.

25. The verbal contract that existed between Davis and Byrd was specifically referenced in paragraph 1.C of the written contract between Davis and Persons.

26. Davis was to be paid $935.00 for each unit that he connected to a water or sewer line.

27. During Davis's performance of the contract the scope of the work was altered by Persons. Persons directed Davis not to connect the sewer lines, but to still connect the water lines. Persons also added to the number of units that needed water, and had Davis install water heaters to all units.  After these additional modifications were performed, a subsequent writing was signed by Mr. Michael Kopf on behalf of Persons, which is attached and incorporated into this Complaint as Exhibit B.

28. Davis completed all of the work for Persons, including the contract modifications, on time and all work passed ACOE inspections.  The last date Davis provided services on the Project to Persons was November 12, 2011.

29. Davis was owed $300,410.00 for its work on the Project as a subcontractor for Persons. Back-charges of $19,339.00 were assessed against the amount Davis was owed.  Persons then paid an advance of $115,000.00 in partial payment of its total obligation.

30. Davis invoiced Persons for all amounts promptly.  Persons never objected to the amount of any invoice.

31. Persons has not paid the remaining $166,071.00 that it owes Davis for work Davis did on the Project.

## CLAIM NO. 1:  BREACH OF CONTRACT BY BYRD

32.  Davis hereby re-alleges and incorporates paragraphs 1 – 31, as though fully set forth herein.

33. A verbal contract existed between Byrd and Davis to perform services on the Project.

34. Davis fully performed all obligations under this contract.

35. Byrd breached its obligations to Davis under the contract by failing to pay Davis the remaining $167,942.00 for services that Davis rendered to Byrd on the Project.

36. Byrd's non-payment has damaged Davis in an amount to be determined at trial.

## CLAIM NO. 2:  MILLER ACT CLAIM AGAINST TRAVELERS BOND ON DAVIS' CONTRACT WITH BYRD

37. Davis hereby re-alleges and incorporates paragraphs 1 – 36, as though fully set forth herein.

38. Travelers is a surety for Byrd's obligation to pay Davis for the unpaid services that Davis provided.  This is evidenced by the payment bond attached as Exhibit C, which is hereby incorporated into this Complaint by reference.

39. The payment bond was to provide the ACOE and the United States with the assurance that the financial interests of all persons supplying labor and materials in the prosecution of the Project would be protected by a Miller Act surety in compliance with the Miller Act, (40 U.S.C. §3131, *et seq.*) and all applicable federal regulations.

40. Byrd contracted directly with Davis to provide services on the Project.

41. Davis is an intended beneficiary of the payment bond issued by Travelers.

42. This suit is commences more than ninety (90) days, and less than one (1) year, after Davis provided the last of his services on Byrd's contract.

43. Davis fully performed all of its obligations under the contract with Byrd.

44. Davis has demanded payment from Byrd and Travelers, but both have either neglected or refused to make payment in full.

45. Davis has sustained damages, as previously set forth, arising from Byrd's breach of contract, and from Byrd and Travelers' refusal to pay the surety bond to Davis in an amount to be determined at trial.

46. The principle sum due from Byrd and its respective surety, Travelers, for the services Davis provided on the Project is $167,942.00.

<strong>Claim No. 3:  Unjust Enrichment by Byrd</strong>

47. Davis hereby re-alleges and incorporates paragraphs 1 – 46, as though fully set forth herein.

48. Davis, in the alternative, makes the following equitable claim for unjust enrichment.

49. Byrd accepted the benefits of Davis' services for work done on the Project and had reasonable notice that Davis expected to be paid the fair market value for all services rendered by Davis.

50. Davis has been damaged by Byrd's non-payment in the amount of $167,942.00.

<strong>Claim No. 4:  Breach of Contract by Persons</strong>

51.  Davis hereby re-alleges and incorporates paragraphs 1 – 50, as though fully set forth herein.

52. A written contract existed between Persons and Davis to perform services on the Project, as evidenced in Exhibits A and B.

53. Davis fully performed all obligations under this contract.

54. Persons breached its obligations to Davis under the contract by failing to pay Davis the remaining $166,071.00 for services that Davis rendered to Persons on the Project.

55. Persons' non-payment has damaged Davis in an amount to be determined at trial.

## CLAIM NO. 5:  MILLER ACT CLAIM AGAINST TRAVELERS BOND ON DAVIS'
## CONTRACT WITH PERSONS

56. Davis hereby re-alleges and incorporates paragraphs 1 – 53, as though fully set forth herein.

57. Travelers is a surety for Byrd and thereby, for Persons, who is a subcontractor of Byrd, on all obligations to pay all subcontractors.  This is evidenced by the payment bond attached as Exhibit C.

58. The payment bond was to provide the ACOE and the United States with the assurance that the financial interests of all persons supplying labor and materials in the prosecution of the Project would be protected by a Miller Act surety in compliance with the Miller Act, (40 U.S.C. §3131, *et seq.*) and all applicable federal regulations.

59. Byrd contracted with Persons for services on the Project.  Persons, in turn, entered into a written contract with Davis as its subcontractor, as evidenced in Exhibits A and B, to provide services on the Project.

60. Davis is an intended beneficiary of the payment bond issued by Travelers.

61. This suit is commences more than ninety (90) days, and less than one (1) year, after Davis provided the last of his services on Persons' contract.

62. Davis fully performed all of its obligations under the contract with Persons.

63. Davis has demanded payment from Byrd, Persons, and Travelers, but all have either neglected or refused to make payment in full to Davis.

64. Davis has sustained damages, as previously set forth, arising from Persons' breach of contract, and from Byrd, Persons' and Travelers' refusal to pay the surety bond to Davis in an amount to be determined at trial.

8

65. The principle sum due from Persons and its respective surety, Travelers, and from the primary contractor, Byrd, for the services Davis provided on the Project is $166,071.00.

**<u>Claim No. 6:  Unjust enrichment by Persons</u>**

66. Davis hereby re-alleges and incorporates paragraphs 1 – 63, as though fully set forth herein.

67. Davis, in the alternative, makes the following equitable claim for unjust enrichment against Persons.

68. Persons accepted the benefits of Davis' services for work done as its subcontractor on the Project and had reasonable notice that Davis expected to be paid the fair market value for all services rendered to Persons by Davis.

69. Davis has been damaged by Persons' non-payment in the amount of $166,071.00.

WHEREFORE,

Davis respectfully prays for the following relief:

A.  Judgment against Byrd for unpaid services on the Project and all damages related thereto in an amount of $167,942.00, as well as additional damages to be determined at trial;

B.  Judgment against Persons for unpaid services on the Project and all damages related thereto in an amount of $166,071.00, and additional damages to be determined at trial;

C.  Judgment against Travelers, as a surety for Byrd, for all unpaid amounts due to Davis by both Byrd and Persons, totaling $334,013.00, and additional damages related thereto in an amount to be determined at trial;

D.  Judgment against all defendants for Davis' costs, disbursements, and fees, including reasonable attorney's fees; and

E.  Any other relief that the Court deems just and proper.

THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL

Dated this _6th_ day of November, 2012.

PEARCE & DURICK

By: _____
CHRISTOPHER J. NYHUS, #06229
PEARCE & DURICK
*Attorney for Plaintiff*
314 East Thayer Avenue
Post Office Box 400
Bismarck, North Dakota 58502-0400
(701) 223-2890