IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America for the use and benefit of Curtis C. Davis d/b/a Davis Contracting Company, | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |
| Plaintiff, | |
| vs. | |
| Persons Service Company, LLC, Byrd Brothers Emergency Services, LLC, and Travelers Casualty and Surety Company of America, | Case No. 4-12-cv-153 |
| Defendants, | |
| Travelers Casualty and Surety Company of America, | |
| Third-Party Plaintiff, | |
| Byrd Brothers, Inc., Claude R. Byrd, James K. Byrd, and Donna R. Byrd, | |
| Third-Party Defendants. | |

Before the court is Third-Party Plaintiff Travelers Casualty and Surety Company of America's ("Travelers") Motion for Default Judgment. (Doc. No. 80).[1] In the motion, Travelers seeks a default judgment against Defendant Byrd Brother Emergency Services, LLC ("BBES") and

---

[1] When this action began, all the parties consented to the undersigned's handling of the case. (Doc. Nos. 8, 16, 17, 18). However, this case has evolved to include third-party defendants, none of whom have consented. Under 28 U.S.C. § 636(c)(1), all parties must consent before a magistrate judge may enter judgment in a case. Without the third-party defendants' consent, the undersigned cannot enter the requested default judgment, leaving the undersigned to handle the matter through report and recommendation for the district court judge's review.

-1-

Third-Party Defendants Byrd Brother, Inc., ("BBI"), Claude R. Byrd, James, K. Byrd, and Donna R. Byrd ("collectively the Byrds"), jointly and severally, in the amount of $727,767.85.

This action began with the catastrophic flooding that befell Minot, North Dakota, in the summer of 2011. BBES contracted with the Army Corp of Engineers to construct a temporary housing site. At the time, BBES had a Performance Bond with Travelers ("the bond"). (Doc. No. 1-3). BBES contracted with Davis Contracting Company ("Davis") to provide various first-tier subcontracting services at the construction site. Persons Service Company, LLC ("Persons"), another first-tier subcontractor at the site, also contracted with Davis to have Davis provide additional second-tier subcontracting services. Both BBES and Persons allegedly did not pay Davis for services provided. Davis then filed suit against BBES and Persons for, amongst other claims, breach of contract and sought the amounts owing under the contracts. (Doc. No. 1). Davis also filed a Miller Act claim against Travelers under the Bond. (Doc. No. 1). This original component of the action has settled, leaving only Travelers' claims, as discussed below, remaining. (Doc. No. 39).

With the court's leave, Travelers filed a cross-claim against BBES and a third-party complaint against BBI and the Byrds. (Doc. No. 48). In conjunction with the bond, BBI and the Byrds signed a general agreement of indemnity ("the indemnity agreement"), under which they agreed to indemnify Travelers for any losses Travelers incurred under the bond. (Doc. No. 48-2). Travelers alleged it received and paid multiple claims under the bond for construction projects in Texas, Louisiana, and North Carolina, all of which were in addition to the claims arising from the Minot flood project. Travelers alleged BBES and the Byrds breached the indemnity agreement by failing to remit payment to Travelers for amounts paid out to claimants under the bond. As Travelers

has represented to the court, it has incurred $727,767.85 in losses, which includes "bond payments, attorneys' fees, costs, and expenses . . . ." (Doc. No. 80).

BBES appeared in this action, filing its answer on November 28, 2012. (Doc. No. 11). Pursuant to Fed.R.Civ.P. 5(b)(2)(C), Travelers served BBES with its cross-claim on July 18, 2014, by mailing it to BBES's last known address. (Doc. No. 60-1). Thereafter, Travelers moved for default. (Doc. No. 60). The Clerk of Court entered default on September 29, 2014. (Doc. No. 64).

The Clerk of Court issued summonses for BBI, James Byrd, Claude E. Byrd, and Donna Byrd. (Doc. No. 49). This summons was returned executed as to James K. Byrd on August 8, 2014. (Doc. No. 53). Travelers represents James K. Byrd is the President of BBI.[2] (Doc. No. 61-1). This summons was returned executed as to Donna R. Byrd on September 16, 2014. (Doc. No. 58). This summons was returned executed as to Claude R. Byrd on December 9, 2016. (Doc. No. 77). None of these parties have answered or otherwise appeared and, upon motion from Travelers, the Clerk of Court entered default accordingly. (Doc. Nos. 63, 64, 79). Travelers now seeks entry of default judgment against these parties, none of which have responded. D.N.D. Civ. L. R. 7.1(F).

On the foregoing, entry of default judgment against the BBES, BBI, and the Byrds is appropriate. None of the parties are minors, incompetent, or members of a miliary service. (Doc. No. 80-1). Years have lapsed since many of the parties were summoned in this action, with the least dilatory having been served nearly ten months ago. Accordingly, the undersigned recommends default judgment be entered against BBES, BBI, and the Byrds under Fed. R. Civ. P. 55.

---

[2]Under Fed.R.Civ.P. 4(h), service may be effectuated as to a corporate entity through delivering a copy of a summons and complaint to a corporate officer. As president of BBI, James K. Byrd would have been authorized to accept service on BBI's behalf, making the service effective both as to him and BBI. This is despite the process server returning the summons issued to BBI as unexecuted. (Doc. No. 54).

As to the appropriate amount for this judgment, the undersigned has reservations about Travelers' request for $727,767.85. The Eighth Circuit has observed:

> "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944). "The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B). See also Am. Red Cross v. Cmty. Blood Ctr., 257 F.3d 859, 864 (8th Cir.2001) ("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." (quoting Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir.2001) (internal quotation marks omitted))). Once the amount of damages has been established, the court may enter judgment pursuant to the rule.

Stephenson v. El-Batrawi, 524 F.3d 907, 915-16 (8th Cir. 2008). In support of the claimed $727,767.85, Travelers has submitted spreadsheets and an affidavit sworn to by a Travelers' bond executive, (Doc. Nos. 80-2, 80-3), which, according to it, establish the amount owing under the prima facie evidence clause found in the implicated indemnity agreement.[3] The undersigned has two concerns about the propriety of the amount requested for entry of default judgment.

The first problem pertains to how Travelers presented its claim for $727,767.85. The spreadsheets submitted by Travelers are little more than check stubs detailing amounts paid, to whom, and when made. The spreadsheets do not provide any information as to the purposes of such payments, leaving the court to guess as to what amounts represent payments made for claims against the bond, what amounts are attorneys' fees, what amounts are investigative expenses, etc. Though

---

[3]The prima facie evidence clause provides "an itemized, sworn statement by an employee of [Travelers], or any other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability." (Doc. No. 48-2). The Eighth Circuit, without objection, has applied prima facie evidence clauses found in indemnity agreements. Spritas Co. v. Ins. Co. of State of Pa., 555 F.3d 647, 656 (8th Cir. 2009); see also Cincinnati Ins. Co. v. B & B Paving, Inc., Case No. 1-16-cv-340, 2017 WL 42468565 at *5 (D.N.D. September 25, 2017).

not warranting denial of the requested amount, this lacking makes it difficult to evaluate the reasonableness and appropriateness of the claim amounts and parlays into a more concerning issue.

It is not at all clear what state law should govern this action. Despite having a North Dakota forum, this action concerns a bond and an indemnity agreement not executed in North Dakota by parties not domiciled in North Dakota, both of which concern various construction projects in North Dakota, Texas, Louisiana, and North Carolina. Sitting in diversity, this court must apply North Dakota choice of law principles, under which the court is to employ a two-prong test evaluating all relevant contacts along with Leflar's choice-influencing considerations. Am. Fire and Casualty Co. v. Hegel, 847 F.3d 956, 959 (8th Cir. 2017). Given that this action concerns multiple out of state parties performing under a contract in multiple states, the law of multiple states could arguably apply. Compounding this uncertainty, the indemnity agreement contains a jurisdictional provision that could arguably dictate the law of the forum in which Travelers sought to adjudicate claims under the indemnity agreement is to apply. (Doc. No. 48-2 pp. 2-3) (stating "[i]n any legal proceeding brought by or against Company that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of Company, of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is preformed."). What law is to apply could have profound consequences on the amount Travelers may be entitled to recover.

As noted above, the total amount requested by Travelers "include[s] bond payments, attorneys' fees, costs, and expenses . . . ." (Doc. No. 80-1 p. 7). If North Dakota law was to apply, Travelers may not be able to collect a good deal of its request amounts. In a recent order involving

a surety attempting to enforce an indemnity agreement containing an attorneys' fees provision, which was executed as a condition for issuance of a surety bond, the undersigned recognized:

> In North Dakota, attorneys' fees are generally available to a prevailing party only when specifically allowed for by contract. N.D.C.C. § 28-26-01(1). A contractual allowance for collection of attorneys' fees notwithstanding, such provisions in debt instruments are generally void:
>> Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorneys' fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose such mortgage or security agreement, is against public policy and void.
>
> N.D.C.C. § 28-26-04; Farmers Union Oil Co. of New England v. Maixner, 376 N.W.2d 43, 48 (N.D. 1985) (stating, although "attorneys' fees can be awarded if agreed by the parties, either expressly or impliedly, such an agreement is limited by Section 28-26-04.").
>
> The North Dakota Supreme Court has generally upheld attorneys' fees provisions in indemnity contracts unrelated to any debt instrument. See e.g., Minex Res., Inc. v. Morland, 518 N.W.2d 682, 689 (N.D. 1994). The same cannot be said, however, where the indemnity contract is executed as a part of, or related to, the debt instruments set forth at N.D.C.C. § 28-26-04. See Maixner, 376 N.W.2d at 48 (stating N.D.C.C. § 28-26-04 "includes the personal guarantee agreement at issue in this case because the guarantee relates to the payment of debt.") (emphasis added). In keeping with that principle, the North Dakota Supreme Court has applied N.D.C.C. § 28-26-04 to invalidate attorneys' fees provisions in indemnification agreements executed as a requirement for issuance of a construction bond. Hartford Acc. & Indem. Co. v. Anderson, 155 N.W.2d 728, 735-36 (N.D. 1968) (concluding "our study of this case has disclosed that the judgment includes attorney fees, and this is perhaps because the indemnity agreement so provides. It is our view, however, that the legislature intended, under N.D.C.C. Sec. 28-26-04, to prohibit a provision for the payment of attorney fees in an instrument such as that involved in this case.").

Cincinnati Ins. Co. v. B & B Paving, Inc., Case No. 1-16-cv-340, 2017 WL 42468565 at *6 (D.N.D. September 25, 2017). Although the undersigned went on to conclude attorneys' fees might still be allowable in that case, the undersigned left the surety with the obligation of demonstrating the propriety of any attorneys' fees award in light of N.D.C.C. § 28-26-04 and the North Dakota Supreme Court's decision in Hartford Acc. & Indem. Co. v. Anderson 155 N.W.2d 728 (N.D. 1968).

Potential application of N.D.C.C. § 28-26-04 adds doubt as to the appropriateness of Travelers' request for $727,767.85. If North Dakota law applies to the totality of this action, N.D.C.C. § 28-26-04 might invalidate Travelers' request for any attorneys' fees to the extent those fees where incurred in collecting under the bond or indemnity agreement. Alternatively, if North Dakota law does not apply in totality, N.D.C.C. § 28-26-04 might still warrant invalidating the attorneys' fees provision as it relates to the Minot flood project. Again in the alternative, North Dakota law might not apply at all, entitling Travelers to the requested amount. Taken with the lack of specificity accompanying the spreadsheets, it is impossible to conclude which payments might fall within the invalidation dictated by N.D.C.C. § 28-26-04, if that invalidation is warranted.

In sum, Travelers has demonstrated it is entitled to a default judgment against BBES, BBI, and the Byrds. However, the $727,767.85 Travelers requested is too uncertain for the court to enter default judgment at this time. To properly demonstrate the appropriateness of the requested amount, Travelers needs to supplement its spreadsheets with information pertaining to the purposes of the payments made. Additionally, Travelers needs to demonstrate to the court's satisfaction that the amounts requested are collectable under whichever state law is to apply to this action.

## RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Travelers' Motion for Default Judgment (Doc. No. 80) be **GRANTED IN PART** to the extent it seeks a default judgment but **DENIED IN PART** to the extent it seeks the currently requested $727,767.85. Further proceedings and/or further filings are necessary to determine the exact amount to which Travelers is entitled.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 17th day of November, 2017.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court